**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **University of Cincinnati,** | : | **Case No. 1:26-cv-00200** |
| | : | |
| **Plaintiff,** | : | **Judge Barrett** |
| | : | |
| **v.** | : | |
| | : | |
| **Brendan Sorsby,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**PLAINTIFF UNIVERSITY OF CINCINNATI'S BRIEF IN OPPOSITION TO THE CINCINNATI ENQUIRER'S MOTION TO INTERVENE**

The Cincinnati Enquirer is trying to improperly circumvent Ohio statutory law precluding the public disclosure of student athlete NIL agreements[1] under the guise of converting this simple breach of contract case into a referendum on the First Amendment. Despite its complaints about what it believes should be in the "public interest," the Enquirer has failed to establish any of the required elements of permissive intervention; its motion is nearly eight months late, and by its own admission, it has not identified a common question of law or fact. Instead, it seeks to litigate a side matter that has "no bearing on the rights at issue in the underlying litigation." Doc. 22, PAGEID # 205. Allowing the Enquirer to intervene would also prejudice the existing parties by forcing them to relitigate a resolved and tangential issue rather than focusing on discovery efforts and/or potentially resolving their dispute.

As for that "public interest," Congress and the General Assembly have made clear through legislation that principles of student privacy, NIL confidentiality, and trade secret protections

[1] Pursuant to R.C. § 3376.06(C)(3), "[a]ny contract, proposed contract, or related documentation disclosed to a state institution of higher education or private college under this section is confidential and not a public record for purposes of section 149.43 of the Revised Code."

outweigh public disclosure interests, and the courts have consistently upheld these nondisclosure statutes. These statutes apply directly to the NIL agreement in issue here.

There is no "public interest" issue here. No one is seeking to seal this case. Every filing except one confidential exhibit is public, and the relevant terms of that exhibit bearing on this case have been fully disclosed—and reported on at length without prior complaint by the Enquirer.

The Motion to Intervene should be denied.

## RELEVANT FACTS & PROCEDURAL HISTORY

### *The underlying dispute and the filing of this lawsuit*

As described in detail in the University's Complaint, this case arises out of a simple breach of contract. Doc. 1, PAGEID # 1, ¶ 1. Defendant Brendan Sorsby signed a confidential name, image, and likeness ("NIL") licensing agreement ("Agreement") with the University in July 2025. *Id.* In broad strokes, the Agreement provided that the University would pay Sorsby certain sums of money over time in exchange for the right to use his NIL for its own promotional purposes. *Id.* To protect the value of the University's bargain, Sorsby promised that if he breached the Agreement by transferring to another institution, he would pay the University $1 million in liquidated damages. *Id.*, PAGEID # 2, ¶ 2.

Six months after signing the Agreement, Sorsby breached it by transferring to Texas Tech University because it offered him a more lucrative NIL deal. But Sorsby did not pay the University the liquidated damages to which it was contractually entitled. *Id.* at ¶¶ 3, 6.

After other efforts to resolve the dispute failed, the University initiated this litigation. Doc. 1, PAGEID # 9–10, ¶¶ 39–41, 52. Mindful of the parties' mutual obligations under the Agreement, the University advised the Court—and all other readers of its publicly filed Complaint—that "[t]he Agreement contains a confidentiality clause that prohibits the parties from disclosing it or its terms

that contain Confidential Information, as defined in the Agreement. If the Court requires a copy of the Agreement, it will be filed under seal at the appropriate time." *Id.*, PAGEID # 5, n.1.

Sorsby moved to dismiss the Complaint, on the theory that the liquidated damages promise he made in the Agreement was unenforceable. In so moving, Sorsby agreed—despite the parties' many differences—that the Agreement was confidential and could only be filed under seal. Doc. 7, PAGEID # 27, n.1 ("The parties will enter into a Protective Order... which will provide for the filing of a complete copy of the Agreement under seal" for confidentiality reasons).

***The sealing of the NIL Agreement here and similar evidence in similar cases***

After briefing on the motion to dismiss closed, and ahead of the Court's first telephonic status conference, the University sought leave to file the Agreement under seal. *See* Doc. 17, PAGEID # 160–68. As the University's motion explained in detail, good cause supported the sealing, for three reasons: the NIL Agreement is (1) a student record protected from public disclosure under the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g; (2) an NIL contract protected from disclosure by Ohio law, Ohio Rev. Code § 3376.06(C)(3); and (3) a trade secret protected from disclosure by Ohio law, Ohio Rev. Code § 1333.61(D)(1)–(2). Doc. 17, PAGEID # 160–68.

Consistent with his statements in his motion to dismiss, Sorsby did not oppose the seal motion. *Id.* at PAGEID # 166. The Court granted the motion, finding the University had shown good cause for it, *see* July 9, 2026 Notation Order ("Order to Seal"), and the University formally filed the Agreement under seal on July 21, 2026. Doc. 19, PAGEID # 172.

Beyond the liquidated damages terms above, the Agreement contains many provisions evincing the University's proprietary and extremely sensitive NIL, marketing, and compensation strategies. *See* Doc. 17, PAGEID # 164–65. This Court and other courts have recognized the

extreme sensitivity of these agreements and that they should not be publicly disclosed. *See*, *e.g.*, *Patterson v. Nat'l Coll. Athl. Ass'n (NCAA)*, No. 3:25-cv-00994 (M.D. Tenn.) (entry of protective order deeming similar NIL materials confidential and nonpublic (Docs. 90, 91); granting multiple motions to seal); *Fontenot v. NCAA*, No. 1:23-cv-03076 (D. Colo.) (same, especially Doc. 127); *Fourqurean v. NCAA*, No. 3:25-cv-00068 (W.D. Wis.) (similar dispute over NIL agreement enforcement; entering protective order and granting sealing of NIL agreement and other materials).

***The Enquirer moves to intervene long after the NIL Agreement is sealed***

Meanwhile, the Enquirer has followed this litigation closely literally from day one. Its coverage of the suit began the day the Complaint was filed. *See* Scott Springer, *Cincinnati Bearcats Sue Former QB Sorsby to Collect Buyout for Transfer*, CINCINNATI ENQUIRER (Feb. 25, 2026).[2] As discussed below, the Enquirer has continued to cover this case and the parties closely since then.

It was not until October 8, 2026, however—nearly eight months after it first had notice of the University's intent to file the Agreement under seal, and three months after the University moved to make that sealed filing—that the Enquirer decided that it should have access to the Agreement. It moved to intervene here, "for the purpose of filing a Motion to Unseal the name, image, and likeness licensing agreement between Plaintiff University of Cincinnati and Defendant Brendan Sorsby[.]" Doc. 22, PAGEID # 200. The Enquirer offered no reason for its timing, or for its choice not to do or say anything on this subject until now.

[2] https://www.cincinnati.com/story/sports/college/university-of-cincinnati/2026/02/25/cincinnati-bearcats-sue-former-qb-brendan-sorsby/88867910007/

## LEGAL STANDARD

There are two kinds of intervention: intervention of right and permissive intervention. *See generally* Fed. R. Civ. P. 24. Here, the Enquirer does not contend that it can intervene as of right and instead seeks only permissive intervention. Doc. 22, PAGEID # 203.

The court may not grant a motion for permissive intervention unless the prospective permissive intervenor (1) files a timely motion and (2) raises a claim or defense that shares a common question of law or fact with the main action. Fed. R. Civ. P. 24(b)(1)(B). If the movant fails to satisfy either requirement, the court need not consider any other factors but must deny the motion. *Kirsch v. Dean*, 733 F. App'x 268, 280 (6th Cir. 2018) (noting that where motion for permissive intervention "did not satisfy… Rule 24(b)'s base requirements… the district court was under no obligation to consider nevertheless whether 'other relevant factors' militated in favor or against intervention.").

But even if the movant makes that initial showing, "the district court still has discretion to decide whether or not to grant permissive intervention." *Bay Mills Indian Cmty. v. Snyder*, 720 F. App'x 754, 759 (6th Cir. 2018) (affirming denial of permissive intervention). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights[,]" Fed. R. Civ. P. 24(b)(3), as well as "any other relevant factors to determine whether, *in the court's discretion*, intervention should be allowed." *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005) (emphasis added). The denial of permissive intervention is "reversed only for clear abuse of discretion." *Purnell v. City of Akron*, 925 F.2d 941, 951 (6th Cir. 1991).

## LAW AND ARGUMENT

### I. The Enquirer's motion is untimely.

The Enquirer's unexplained eight-month delay in seeking intervention precludes the relief it seeks. A prospective intervenor must first show that its motion to intervene is timely. *Nat'l Ass'n for Advancement of Colored People (NAACP) v. New York*, 413 U.S. 345, 365 (1973) ("the court where the action is pending must first be satisfied as to timeliness"); Fed. R. Civ. P. 24(b) (permissive intervention available only "[o]n a timely motion"). This timeliness question is a "threshold determination… within the sound discretion of the trial court." *Bradley v. Milliken*, 828 F.2d 1186, 1191 (6th Cir. 1987). Five factors are particularly relevant to that determination:

> (1) the point to which the suit has progressed;
>
> (2) the purpose for which intervention is sought;
>
> (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case;
>
> (4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his interest in the case, to apply promptly for intervention; and
>
> (5) the existence of unusual circumstances militating against or in favor of intervention.

*Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989). If an application for permissive intervention is untimely, "intervention must be denied." *NAACP v. New York*, 413 U.S. at 365.

None of these factors favors permitting the proposed intervention.

***Factor 1, the point to which the suit has progressed.*** This factor favors denying intervention. This case is well into discovery. The University has served two rounds of written discovery, the Defendant has tendered some responses, and the parties have met and conferred regarding deficiencies in those responses. Expert report deadlines are fewer than 60 days away. Doc. 14, PAGEID # 153. The parties cannot know what, besides moving to unseal, the Enquirer

intends to do once it becomes a party to this case—but if it wishes to participate in the litigation in any way, this would likely necessitate pushing back all of the deadlines, including the final pretrial conference and jury trial, which have already been scheduled. Doc. 14, PAGEID # 154.

***Factor 2, the purpose of the proposed intervention.*** This factor also weighs in favor of denying intervention. As an initial matter, the University reserves the right to file a full brief in opposition to the Enquirer's Motion to Unseal if it is ultimately filed on the docket, and it objects to any effort to litigate that motion prematurely here. With that understanding, however, it is worth noting that the Motion to Unseal is based upon the flawed premise that all litigation matters and documents must be made public under all circumstances. Although the Enquirer says that it seeks to vindicate "rights protected by the First Amendment to the United States Constitution," the Supreme Court has made clear that the First Amendment does not forbid a court from prohibiting disclosure of documents or information to or by the press where the public does not have any right of access to such documents or information. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 31 (1984) (protective orders barring public disclosure by newspapers of information obtained through discovery do not categorically violate the First Amendment); *see also In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 474 (6th Cir. 1983) ("[T]he right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes") (quoting *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 598 (1978)).

The Enquirer cites several non-binding, out-of-circuit cases that it argues "require" the Court to allow it to intervene and move to unseal the Agreement. But those cases concerned public access to, for instance, depositions that were required by federal statute to be open to the public, *New York v. Microsoft Corp.*, No. CIV.A.98-1233(CKK), 2002 WL 318565, at *1 (D.D.C. Jan. 28,

2002), and a judicially approved settlement agreement, *Jessup v. Luther*, 227 F.3d 993, 997 (7th Cir. 2000), rather than student records that were required by federal and state statutes to be kept confidential.

As for *Knoxville News-Sentinel*, the court in that case *affirmed the sealing* of two exhibits in the case, in part because they contained information protected from disclosure by the Right to Financial Privacy Act and other federal statutes. 723 F.2d at 476. Thus, *Knoxville News-Sentinel* actually supports the sealing of the Agreement—which, again, is protected by FERPA as an educational record, by Ohio statute as an NIL contract, and by the Ohio trade secrets statute.

Still, the Enquirer complains that the Order to Seal "impedes [its] ability to gather news and access documents filed in the case." Doc. 22, PAGEID # 204. This is hard to credit, given the extensive amount of reporting that the Enquirer has already done on this subject. *See*, *e.g.*, Scott Springer, *Cincinnati Bearcats Sue Former QB Sorsby to Collect Buyout for Transfer*, CINCINNATI ENQUIRER (Feb. 25, 2026) (linked *supra* at n.2); Scott Springer, *Ex-UC Bearcats QB Brendan Sorsby's Lawyers Intend to Fight Buyout Lawsuit*, CINCINNATI ENQUIRER (Feb. 26, 2026);[3] Scott Springer, *UC, Former Bearcats QB Sorsby Could Settle 'Buyout' Issue in Court*, CINCINNATI ENQUIRER, 2026 WLNR 6179602 (Mar. 1, 2026); Scott Springer, *Former UC Bearcats QB Brendan Sorsby's NCAA Career in Jeopardy*, CINCINNATI ENQUIRER (Apr. 27, 2026) (quoting Sorsby's motion to dismiss at length);[4] Scott Springer, *Did UC Bearcats Leaders Know Brendan*

---

3 https://www.cincinnati.com/story/sports/college/university-of-cincinnati/2026/02/26/brendan-sorsby-lawyer-texas-tech-lawsuit-cincinnati-qb/88891040007/

4 https://www.cincinnati.com/story/sports/college/university-of-cincinnati/2026/04/27/ex-university-cincinnati-beatcats-qb-brendan-sorsby-gambling-could-cost-ncaa-football-eligibility/89823898007/

*Sorsby Was Betting? What We Know*, CINCINNATI ENQUIRER (Apr. 29, 2026) (same);[5] Scott Springer, *Brendan Sorsby Attorney Won't Comment on Legal Moves Regarding QB's Eligibility*, CINCINNATI ENQUIRER (May 15, 2026).[6] Beyond those articles, the Enquirer has also published articles on Sorsby and the University on at least June 8 (twice), June 9 (twice), June 10 (twice), June 16 (three times), June 17, June 23, June 26, June 30, July 7, August 2, and September 2.

Plus, the Complaint quotes and summarizes all of the Agreement's provisions that are relevant to the lawsuit. *See generally* Doc. 1, PAGEID # 1–12, esp. PAGEID # 5–8, ¶¶ 20–26, 28, 30–35 (detailed explanations and quotations). And the Agreement is the only sealed filing; nothing else on the docket has been sealed, redacted, or otherwise limited, and as shown above, the Enquirer has reported in detail on all of it. The Enquirer thus has every "ability to gather news and access documents filed in the case," Doc. 22, PAGEID # 204, as its own reporting proves. Thus, as in other cases before this Court, "the pleadings and other public filings" have allowed the Enquirer "to discern the nature of the parties' dispute and will ultimately" enable it "to understand the reasoning underlying the Court's ruling on the parties' dispositive motions." *Bidwell Fam. Corp. v. Shape Corp.*, No. 1:19-CV-201, 2022 WL 952747, at *1 (S.D. Ohio Mar. 30, 2022) (granting motion to seal contract that "contain[ed] confidential and potentially proprietary information" and was "also subject to a confidentiality provision"). There simply is no need for the Enquirer to intervene to file a motion to unseal the Agreement.

***Factor 3, how long the movant knew of its interest in the case.*** Regarding the third factor—the length of time that the Enquirer knew of its purported interest in the case before seeking

---

5 https://www.cincinnati.com/story/sports/college/university-of-cincinnati/2026/04/29/brendan-sorsby-gambling-investigation-update-cincinnati/89838764007/

6 https://www.cincinnati.com/story/sports/college/university-of-cincinnati/2026/05/15/brendan-sorsby-attorney-mum-on-legal-maneuvers-for-former-uc-texas-tech-big-12-quarterback/90098213007/

leave to intervene—the Enquirer has offered no explanation for its nearly eight-month delay. Aspiring intervenors are held to have constructive knowledge of publicly available documents, including court filings. *E.g.*, *Cronin v. Poag & McEwen Lifestyle Ctrs., LLC*, No. 2:10-cv-02441, 2017 WL 2560930, at *3 (W.D. Tenn. June 13, 2017) (citing *Ruth v. Unifund CCR Partners*, 604 F.3d 908, 912 (6th Cir. 2010)). Here, the Enquirer had not just constructive knowledge, but *actual* knowledge, as demonstrated by its own published reporting on the case, which quoted extensively from both sides' filings. If the Enquirer truly had an interest in this case that justified permissive intervention, it would have asserted that interest immediately, rather than waiting nearly eight months after the Complaint was filed. At the very least, the Enquirer could and should have sought to intervene in early July of this year, when the seal issue was put before the Court and resolved. Instead, it waited silently on the sidelines, and now offers no reason for its delay.

***Factor 4, prejudice to the parties.*** As to the fourth factor, the Enquirer's delay in seeking leave to intervene has prejudiced both parties. If the Enquirer had sought leave to intervene when the parties first expressed the intention to file the Agreement under seal, or when the University sought leave to file it under seal, the parties could have addressed the Enquirer's arguments in their own briefing on the sealing issue. By waiting until nearly three months after the Court's order resolving that issue, the Enquirer seeks to reopen this settled issue altogether, and to force the parties and the Court to expend inordinate time and resources re-litigating it.

The Enquirer's intervention would further prejudice the University, in that it would open this case to the Enquirer's effort to make the Agreement and the University's confidential, proprietary business practices public, in contravention of state and federal statutes and well-established legal protections against the public disclosure of such trade secrets.

The Enquirer's intervention could cause even more prejudice if the Enquirer uses its new status as a party as most intervenors do: to act like a genuine party in interest and take discovery accordingly. This would be an inappropriate end-run around Ohio's public records laws and would allow a press outlet the unprecedented ability to dig into litigants' records through the vehicle of civil discovery and to report on what it might obtain. All of this would also violate the Court's protective order, Doc. 12. And it would also blow up the parties' discovery plan and the Court's calendar order, Doc. 14, and delay the case indefinitely.

The Enquirer cites *Shy v. Navistar Int'l Corp.*, 291 F.R.D. 128, 134 (S.D. Ohio 2013), for the proposition that "dilatory intervention" is "[only]" prejudicial "after the expense of discovery or on the eve of trial[.]" Doc. 22, PAGEID # 206. *Shy* says no such thing, and the Enquirer's effort to add the word "only" in brackets to change the meaning of the quoted sentence is unfortunate. To the contrary, the *Shy* court concluded that the prejudice factor "d[id] not apply due to the unique circumstances of this case[,]" because intervention was actually necessary to protect the plaintiffs' interests, and the defendant failed to "present a single example of the prejudice it might face" if intervention were allowed. 291 F.R.D. at 134. In any event, the parties here have already incurred significant "expense of discovery" and continue to incur more as time goes on. The Enquirer's unexplained delay is plenty prejudicial and precludes its relief. *See*, *e.g.*, *NAACP v. New York*, 413 U.S. at 365–69 & n.19 (affirming denial of intervention for untimeliness when appellants moved to intervene two months after having constructive knowledge of the suit).

***Factor 5, unusual circumstances.*** On the fifth "catch-all" factor—unusual circumstances militating against intervention—the Enquirer conspicuously filed its motion to intervene right in the middle of the college football season. While that timing may be particularly optimal for the Enquirer's efforts to promote its own sports reporting, it is also particularly prejudicial to the

University, as it distracts both from the primary purpose of this litigation and from the University's educational and athletic services to its students.

## II. The proposed motion to unseal does not raise a common question of law or fact.

As noted above, a prospective intervenor must identify a common issue of law or fact between the claims already in the case and the ones that it wishes to insert. "[A] proposed intervenor may not inject itself into a lawsuit under Rule 24(b) where, like here, it has no interest in a factual or legal dispute between the parties, but instead is merely concerned that resolution of the parties' claims might have collateral consequences for the proposed intervenor's independent interests." *Kirsch v. Dean*, 733 F. App'x 268, 279 (6th Cir. 2018).

The Sixth Circuit's decision in *Kirsch* is instructive on this point. In *Kirsch*, the prospective intervenor sought to insert itself into the case to disqualify one party's lawyer, because the lawyer had been involved in drafting a contract at issue in the litigation. The panel affirmed the district court's denial of permissive intervention, rejecting the idea that intervention was appropriate simply because the proposed intervenor had its own interests in the contract at issue in the litigation. *Id.* ("a common question of fact does not exist simply because the [contract] is featured in both [the] motion to intervene and [the] lawsuit"). The would-be intervenor was not trying "to enforce or challenge or interpret" the contract; rather, it was asserting a disqualification claim "that is entirely tangential to the [contract]-related questions implicated by [the] suit." *Id.*

Here, the Enquirer's intervention effort suffers the same problem. It admits in its own motion that "[t]he First Amendment issues implicated by the Order to Seal have no bearing on the rights at issue in the underlying litigation." Doc. 22, PAGEID # 205. Under *Kirsch*, then, the Enquirer asserts no common question at all, and its motion to intervene must be denied.

**III. Permitting the Enquirer to intervene now would prejudice the existing parties.**

Finally, as discussed more fully in Section I, above, granting the Enquirer's motion to intervene would prejudice the existing parties by forcing them to relitigate a decided issue amid active discovery. In recognition of that fact, other courts in this Circuit have concluded that intervention to challenge an already-entered order to seal is prejudicial to the existing parties and denied it on that basis. *See, e.g.*, *Cronin*, 2017 WL 2560930, at *3 ("regardless of the temporal factor, this Court already determined in its prior orders that these documents should be sealed from public view due to their contents," and therefore "those prior orders alone demonstrate that the original parties would suffer significant and undue prejudice should Proposed Intervenors be permitted to intervene."). This Court should reach the same conclusion here.

Of course, granting intervention and unsealing would cause further harm by exposing Sorsby's and the University's confidential information, which is protected from public disclosure independently by three different statutes. In its proposed motion to unseal, the Enquirer tries but fails to argue its way out from underneath the clear language of these statutes—for example, by arguing (1) that FERPA protections dissolve immediately once a party moves to file a protected document under seal, because that means the document is "maintained" on the docket as well as in the University's files, *see* Doc. 22-2, PAGEID # 216–17 (citing no law supporting this reading), and (2) that NIL contracts between student-athletes and universities are confidential only if they somehow originate outside the university, which is impossible, *see* Doc. 22-2, PAGEID # 217–18 (misreading the plain language of the statute). The University respectfully reserves the right to respond to all of the Enquirer's proposed arguments in full if the Court grants the Enquirer leave to intervene and file its proposed motion to unseal.

**CONCLUSION**

For the foregoing reasons, the Motion to Intervene should be denied.

Dated: October 29, 2026

Respectfully submitted,

*/s/ David M. DeVillers*

David M. DeVillers (Ohio No. 0059456)
Trial Attorney
BARNES & THORNBURG LLP
41 South High Street, Suite 3300
Columbus, Ohio 43215
Tel: (614) 628-0096 / Fax: (614) 628-1433
David.DeVillers@btlaw.com

Christopher J. Bayh (Ohio No. 0101638)
Lara Langeneckert (admitted PHV)
BARNES & THORNBURG LLP
11 S. Meridian Street
Indianapolis, Indiana 46204
Tel: (317) 236-1313 / Fax: (317) 231-7433
Chris.Bayh@btlaw.com
Lara.Langeneckert@btlaw.com

*Counsel for Plaintiff University of Cincinnati*

## CERTIFICATE OF SERVICE

I certify that on October 29, 2026, the foregoing was filed using the Court's CM/ECF system, which will send electronic notice of such filing to all counsel of record.

*/s/ David M. DeVillers*
David M. DeVillers (Ohio No. 0059456)